**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Davidson Transfer, LLC, on behalf of itself and all others similarly situated, ) | Case No. 1:15-cv-3005 |
| ) | |
| Plaintiff, ) | **CLASS ACTION COMPLAINT** |
| ) | |
| vs. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Espar, Inc. and Espar Products Inc., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Davidson Transfer, LLC ("Plaintiff"), on behalf of itself and all others similarly situated (the "Class," as defined below), upon personal knowledge as to the facts pertaining to itself and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws, demands a jury by trial, and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this this action in response to a conspiracy to fix prices for air and coolant parking heaters (as defined below) sold aftermarket for use in commercial vehicles. The term "Parking Heaters" includes the heaters themselves, accessories sold for use with the heaters and packaged kits containing heaters and select accessories. "Aftermarket" means a Parking Heater sold for installation in a vehicle after the vehicle has been sold by its original manufacturer.

2.      Parking Heaters are used in many types of commercial vehicles to heat passenger compartment of the vehicle while the vehicle's main engine is not running. Operating a Parking Heater is preferential to running the vehicle's engine because a Parking Heater is much more efficient.

3.      From at least October 1, 2007 through at least December 31, 2012 (the "Class Period"), Defendants Espar Inc. and Espar Products Inc. (collectively "Espar" or "Defendants"), as well as Defendants' unnamed and heretofore unknown co-conspirators conspired to fix prices for Parking Heaters. Through this unlawful collusion, Defendants and their co-conspirators inflated the price of Parking Heaters to artificially high levels, netting substantial unlawful overcharges over the course of the Class Period from sales made to members of the Classes, including Plaintiff.

4.      The United States Department of Justice ("DOJ") has undertaken an investigation into anticompetitive conduct in the market for Parking Heaters. So far, this investigation has resulted in one conspirator, Defendant Espar Inc., pleading guilty to one count of violating the Sherman Act. *See* Plea Agreement, *United States v. Espar Inc.*, No. 1:15-cr-00028-JG (E.D.N.Y. Mar. 12, 2015), ECF No. 16. The court found a factual basis for Espar Inc.'s guilty plea, and set a sentencing date of June 5, 2015. *See* Criminal Calendar for a Guilty Plea, *United States v. Espar Inc.*, No. 1:15-cr-00028-JG (E.D.N.Y. Mar. 12, 2015), ECF No. 15.

5.      This price-fixing conspiracy enabled Defendants and their unnamed co-conspirators to charge more for Parking Heaters to Plaintiff and members of the Classes than they would has been able to absent the conspiracy. Plaintiff therefore seeks relief for the damages it has suffered as a result of Defendants' violations of antitrust law, asserting claims under the Sherman Act (15 U.S.C. §§ 1, *et seq.*) and the Clayton Act (15 U.S.C. §§ 12, *et seq.*)

## JURISDICTION AND VENUE

6.      Plaintiff brings this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries that Plaintiff other Class members have suffered from Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. §§ 15 and 26.

8.      Venue is proper in this District pursuant to 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d) because, during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District.

## THE PARTIES

### Plaintiff

9.      Plaintiff Davidson Transfer, LLC is organized under the laws of the state of Minnesota. Davidson Transfer, LLC's principal place of business is in Albertville, MN. Davidson Transfer, LLC purchased a Parking Heater manufactured by Espar and/or one of its unnamed co-conspirators during the Class Period, paying more for the parking heater than it would have absent the anticompetitive conduct of Defendant and its unnamed co-conspirators, and was injured as a result.

### Defendant

10.     Defendant Espar Inc. is a corporation organized under the laws of the State of Illinois and headquartered in Novi, Michigan. Espar Inc. has pleaded guilty for its role in the conspiracy alleged herein. On March 12, 2015, Espar Inc.'s plea was entered by Judge John Gleeson of the United States District Court for the Eastern District of New York. Espar Inc.'s sentencing is scheduled for June 5, 2015.

11.     Defendant Espar Products Inc. is a Canadian corporation with its principal place of business in Ontario, Canada. Upon information and belief, Espar Inc. is a subsidiary of Espar Products Inc., Espar Inc. and Espar Products Inc. are sister corporations, or Espar Inc. and Espar Products Inc. are otherwise affiliated. Espar Inc. and Espar Products Inc. are collectively referred

to herein as "Espar." During the Class Period, Espar, directly and through its affiliate corporations, sold Parking Heaters in the United States for commercial use in the aftermarket.

## UNNAMED CO-CONSPIRATORS

12.    Various other presently unidentified entities and individuals not named as defendants in this Complaint participated as co-conspirators in the acts complained of and acted to aid, abet, and otherwise further the unlawful conduct alleged herein.

## CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of itself and all others similarly situated, seeking injunctive relief. This "Nationwide Injunctive Relief Class" is defined as:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, indirectly from a Defendant or one of its co-conspirators, an air or coolant parking heater sold in the aftermarket, including the heaters themselves, accessories sold for use with the heaters and packaged kits containing heaters and select accessories ("Parking Heaters") at any time between October 1, 2007 and December 31, 2012 (the "Class Period").

14.    Plaintiff also brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and others similarly situated, seeking disgorgement and other equitable relief pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. This "Nationwide Equitable Relief Class" is defined as:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, indirectly from a Defendant or one of its co-conspirators, an air or coolant parking heater sold in the aftermarket, including the heaters themselves, accessories sold for use with the heaters and packaged kits containing heaters and select accessories ("Parking Heaters") at any time between October 1, 2007 and December 31,

2012 (the "Class Period").

15.     Upon certification of the Nationwide Equitable Relief Class, Plaintiff will seek certification, under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, of statewide subclasses asserting claims for damages under the antitrust and/or consumer protection statutes of the following thirty-one (31) jurisdictions: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin (collectively, the "State Law Damages Subclasses"). In the event that the Court does not certify the Nationwide Equitable Relief Class, Plaintiff will seek certification of state-wide classes as discrete classes asserting damages under the various antitrust and/or consumer protection statutes of the State Law Damages Jurisdictions (the "State Law Damages Classes").

16.     The definition of each State Law Damages Subclass or Class is:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in [STATE], indirectly from a Defendant or one of its co-conspirators, an air or coolant parking heater sold in the aftermarket, including the heaters themselves, accessories sold for use with the heaters and packaged kits containing heaters and select accessories ("Parking Heaters") at any time between October 1, 2007 and December 31, 2012 (the "Class Period").

17.     The Nationwide Injunctive Relief Class, the Nationwide Equitable Relief Class, and the State Law Damages Subclasses or Classes are collectively referred to as the "Classes" unless otherwise indicated. Also excluded from the Classes are Defendants' attorneys in this matter, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, all judges assigned to

this matter, all jurors in the matter, and all persons and entities who only purchased Parking Heaters directly.

18. The Classes are so numerous that joinder of all members is impracticable. Many hundreds, if not thousands, of Class members purchased Parking Heaters indirectly from Defendants and their co-conspirators during the Class Period.

19. Plaintiff's claims are typical of the claims of the members of Classes because they were all damaged by the actions of Defendants and their co-conspirators which caused them to pay artificially inflated prices for Parking Heaters.

20. Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class members.

21. Plaintiff is represented by counsel who are experienced and respected in the prosecution of class action and antitrust litigation.

22. This case presents many common questions of law and fact that will predominate over any questions that may affect individual members of the Classes, such as:

(a) Whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain and/or stabilize prices of Parking Heaters sold in the United States and/or for delivery into the United States;

(b) The duration and extent of the conspiracy;

(c) The identities of the participants in the conspiracy;

(d) The acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(e) Whether the acts of Defendants and their co-conspirators in so conspiring

violated Section 1 of the Sherman Act;

(f)     The effect of the conspiracy on the prices of Parking Heaters sold in the United States and/or for delivery into the United States during the Class Period;

(g)     Whether the conduct of Defendants and their co-conspirators caused injury to Class members; and

(h)     The measure and amount of damages incurred by the Classes.

23.     Adjudicating the claims of Class members as a class action is superior to the alternative, because it allows for the fair and efficient adjudication of the controversy alleged in this Complaint, while avoiding the risk that the prosecution of separate actions by individual members of the Classes would create inconsistent adjudications, establishing incompatible standards of conduct for Defendants. This action presents no difficulties in management that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

24.     The conduct of Defendants and their co-conspirators, as described in this Complaint, was within the flow of, was intended to, and did have substantial effect on, the interstate commerce of the United States, including this District.

25.     During the Class Period, Defendants and their co-conspirators, manufactured, sold, and shipped Parking Heaters in a continuous and uninterrupted flow of interstate commerce. Defendants and their co-conspirators' price-fixing conspiracy had a direct, substantial, and reasonably foreseeable effect on interstate commerce.

## FACTUAL ALLEGATIONS

**I.    PARKING HEATER BACKGROUND**

26.    When operators of commercial vehicles, such as large commercial trucks, are parked in their vehicle for significant periods of time, they often need a way to keep warm. Idling the vehicle's main engine is one way to provide heat to the cabin of the vehicle.

27.    However, idling engines still emit the same pollutants as moving vehicles, contribute to global warming through the release of carbon dioxide ($CO_2$), and burn a significant amount of fuel. Idling also poses health risks to vehicle operators because a stationary vehicle creates no air flow to vent the emissions.

28.    Parking Heaters provide a solution to this problem, generating heat without the need to idle the vehicle's engine. The Parking Heaters which Espar and its competitors sell fall into two primary categories: (a) air heaters, which heat interior or outside air drawn into the heater unit, circulating it in the passenger compartment; and (b) water or "coolant" heaters, which are integrated into the engine coolant circuit and heat the engine as well as the passenger compartment.

29.    Air Parking Heaters have a heating element and a blower to provide heat either through a direct duct or through a vehicle's factory-installed HVAC ducting. Such air Parking Heaters are much more efficient than the vehicle's main engine for providing heat, on average burning no more than a gallon of fuel every 24 hours. In additional to their efficiency, air Parking Heaters require minimal maintenance.

30.    Coolant Parking Heaters function akin to a residential water heater, heating liquid coolant and circulating it to pre-heat engine components. Such coolant heaters can be used to preheat an engine, fuel, hydraulics and other service fluids – and provide supplementary heat to the vehicle's passenger compartment.

31.     These different types of heaters share the primary goal of providing a more efficient method of heating the passenger compartment than simply idling the vehicle's engine.

32.     The conspiracy alleged in this Complaint includes an agreement to fix, raise, or maintain the price of fuel-operated Parking Heaters used in commercial vehicles, including both coolant Parking Heaters and air Parking Heaters, as well as Parking Heater accessories and Parking Heater kits, in which both the Parking Heater and the accessories were sold together.

## II.     THE CONSPIRACY TO FIX PRICES FOR PARKING HEATERS.

33.     Via surreptitious meetings and discussions, Espar and its co-conspirators agreed to fix, raise and/or maintain prices of Parking Heaters sold to aftermarket customers in the United States and elsewhere in North America.

34.     In furtherance of the conspiracy, Espar and its co-conspirators discussed prices for Parking Heaters, agreed to set a price floor for Parking Heater kits, and agreed to coordinate the timing and amount of price increases.

35.     Espar and its co-conspirators enforced this unlawful agreement by exchanging information that allowed the co-conspirators to monitor adherence to the agreement.

## III.     THE STRUCTURE OF THE PARKING HEATER INDUSTRY

36.     The structure of the Parking Heater industry is conducive to unlawful collusion.

37.     Espar and its co-conspirators sell Parking Heaters through a variety of channels, including distributors, dealers and original equipment manufacturers.

38.     As one method of sales, Espar enters into contracts with "Master Service Dealers." These agreements include specified "territories" in which the Master Service Dealer ("MSD") is permitted to sell, install, and repair Espar's products. The agreements also specify "markets inside or outside of the Territory to the customers of which the MSD is not authorized to sell the Products." Master Service Dealers are required to purchase a minimum dollar amount

of Espar's products, perhaps $75,000. Master Service Dealers are also required to promote

Espar's products through sales staff, display space, and trade fairs.

39.     Espar is a major supplier of Parking Heaters in North America, with sales of over

$62.4 million in the United States during the Class Period.

40.     Together with Espar, there are two additional companies that dominate the market

for Parking Heaters: Webasto and Proheat.

41.     Webasto Thermo & Comfort North America, Inc., which manufactures parking

heaters for commercial and other vehicles, is headquartered in Fenton, Michigan, where it also

operates a manufacturing plant. Webasto Thermo & Comfort SE owns Webasto Thermo &

Comfort North America, Inc. and is headquartered in Gilching, Germany. Webasto SE in turn

owns Webasto Thermo & Comfort SE, and is headquartered in Stockdorf, Germany.

Collectively, Webasto Thermo & Comfort North America, Inc., Webasto Thermo & Comfort

SE, and Webasto SE will be referred to herein as "Webasto." Webasto manufactures multiple air

and coolant Parking Heaters for commercial vehicles and heavy machinery. For its 2013 fiscal

year, Webasto's heating and cooling systems division accounted for 20% of its more than €2.5

billion sales volume. Webasto alone accounts for 75% of the global Parking Heater market.

42.     Marine Canada Acquisition Inc. is based in British Columbia, Canada. Marine

Canada Acquisition Inc. manufactures both air and coolant Parking Heaters under the "Proheat"

brand. All references herein to "Proheat" refer to Marine Canada Acquisition Inc.

43.     Espar manufactures and sells Parking Heaters that are interchangeable and in

competition with Parking Heaters offered by other manufacturers, including Webasto and

Proheat. Parking Heaters serve a uniform purpose; they provide an alternative to engine idling

for heating a passenger compartment and/or to vehicle equipment. Parking Heaters produced by

the dominant manufacturers also have generally comparable fuel consumption rates, heat output, electrical consumption, weight, and other attributes. Owing to the similar nature of different brands of Parking Heaters, price will be a primary consideration when consumers are making a decision regarding which Parking Heater to purchase. Parking Heaters therefore act as commodity-like products.

44.     Fuel-operated Parking Heaters have few direct substitutes. Other options for heating passenger compartments without idling the vehicle's engine include auxiliary power units ("APUs") and generator set systems ("gen-sets"), which incorporate an HVAC system, but cost three to eight times as much as Parking Heaters. A gen-set can cost more than $8,000 compared to Parking Heaters' price of $1,500 or less. APUs and gen-sets are also much more complex to install, weigh significantly more than Parking Heaters, and require more maintenance. APUs that are battery powered also have a runtime restricted by battery capacity. APUs and gen-sets therefore constitute a distinct product market from Parking Heaters.

45.     The Parking Heater industry also imposes high barriers to entry. Such barriers include technical know-how, including the manufacturing expertise required to make efficient, safe Parking Heaters, and access to distribution channels. Moreover, Espar's Master Service Dealers are prohibited from manufacturing, distributing or promoting competing products within their designated territories, necessitating that potential entrants build distribution channels completely from the ground up.

46.     Industry trade shows provided Espar with the opportunity to collaborate with its competitors. Espar and Webasto, for example, are regular attendees of the National Truck Equipment Association's annual Work Truck Show.

47.     Espar and Webasto also regularly attend the Technology & Maintenance Council's Annual Meeting & Transportation Technology Exhibition, as well as Truck-World-Canada's biennial National Truck Show.

48.     In addition, Espar and competitors Webasto and Proheat also regularly attend the annual Mid-America Trucking Show.

49.     Regular attendance in such trade shows provided Espar ample opportunity to conspire with other Parking Heater industry participants.

50.     The Parking Heater market's susceptibly to anticompetitive conduct makes the conspiracy alleged herein plausible, particularly in light of the commodity-like nature of Parking Heaters, the high barriers to entry into the industry, the fact that the market is highly concentrated, and the opportunities Espar and its unnamed co-conspirators had to conspire at the various trade show meetings they each attended.

## IV.   DOJ INVESTIGATION

51.     At some point before January 26, 2015, the DOJ began investigating unlawful and anticompetitive conduct in the Parking Heater industry.

52.     On January 26, 2015, the DOJ filed notice of Defendant Espar's waiver of prosecution by indictment and the DOJ's intention to prosecute by information. The criminal case was thereafter assigned to the Honorable John Gleeson of the Eastern District of New York.

53.     On March 12, 2015, Defendant Espar Inc. pleaded guilty to violating one count of the Sherman Act for its participation in the conspiracy alleged herein.

54.     According to the criminal Information that accompanied Defendant Espar Inc.'s plea:

> During the relevant period, for the purpose of forming and carrying out the charged conspiracy, the defendant and its co-conspirators knowingly did those things that they combined and conspired to do, including, among other things:

(a) participating in communications, discussions, and meetings in the United States and elsewhere to discuss aftermarket prices for parking heaters for commercial vehicles;

(b) agreeing, during those conversations and meetings, to set a price floor for parking heater kits for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

(c) agreeing, during those conversations and meetings, to coordinate the timing and amount of price increases for parking heaters for commercial vehicles sold to aftermarket customers in the United States and elsewhere in North America;

(d) exchanging information during those conversations and meetings for the purpose of monitoring and enforcing adherence to the agreements described in subparagraphs (b) and (c) above; and

(e) selling parking heaters for commercial vehicles to aftermarket customers at collusive and non-competitive prices in the United States and elsewhere in North America.

Information, *United States v. Espar Inc.*, No. 1:15-cr-00028-JG (E.D.N.Y. Mar. 12, 2015), ECF No. 13.

55.     Attachment A to the plea agreement contains the "name of individuals who have not received protection under the plea agreement but who have not been indicted." Letter Motion, *United States v. Espar Inc.*, No. 1:15-cr-00028-JG (E.D.N.Y. Feb. 3, 2015), ECF No. 2. Attachment A was filed under seal, and therefore these individuals have not yet been publicly identified.

56.     Pursuant to the plea agreement, Espar Inc. agreed to pay a criminal fine of $14.97 million. The plea does not require Espar to pay restitution to those harmed by its conduct.

57.     As part of its plea agreement, Defendant Espar Inc. agreed to cooperate with the DOJ in its ongoing investigation into the conspiracy alleged herein. This cooperation extends not only from both Espar Defendants, but also their German parent companies Eberspaecher Climate Control Systems GmbH & Co. KG and Eberspaecher Gruppe GmbH & Co. KG. As part of this

cooperation, Espar will provide documents to the DOJ and secure cooperation from officers, directors and employees, including through interviews and testifying before a grand jury if so called.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

58.     Plaintiff and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein. Plaintiff and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until, at the very earliest, February 26, 2015, when the DOJ investigation into the conspiracy was first revealed to the public by the media.

59.     By its very nature, the Defendants' anticompetitive conspiracy or combination was inherently self-concealing. Defendants and their co-conspirators met and communicated in secret and agreed to keep the facts about their collusive conduct from being discovered by any member of the public.

60.     Plaintiff and members of the Classes could not have discovered the alleged combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their conduct.

61.     Espar even went so far as to affirmatively represent that it priced competitively, stating in 2010, for example, that "Espar provides uncompromised quality at competitive pricing."

62.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no

knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until February 26, 2015, when the media first broke news of the DOJ's investigation. Additionally, while the DOJ investigation became public information on February 26, 2015, the facts necessary to plausibly state claims for conspiracy and manipulation were not made public until March 12, 2015, when Espar Inc. entered its guilty plea before Judge Gleeson in open court.

63.     Because of Espar's fraudulent concealment, any applicable statute of limitations affecting or limiting the rights of action by Plaintiff or members of the Classes has been tolled during the period of such fraudulent concealment.

## PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY

64.     The price-fixing conspiracy engaged in by Defendants and their co-conspirators had the following effects, among others:

(a)     price competition has been restrained, suppressed, or eliminated with respect to the sale of Parking Heaters by Espar and its unnamed co-conspirators;

(b)     prices charged to Plaintiff and the other members of the Classes for Parking Heaters have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)     Plaintiff and the other members of the Classes paid artificially inflated prices for Parking Heaters.

65.     By reason of the alleged violations of the antitrust laws alleged herein, Plaintiff and the members of the Classes have sustained injury to their business or property, having paid higher prices for Parking Heaters than they would have paid in the absence of the illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount

presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT**
**(15 U.S.C. § 1)**
**(Injunctive Relief)**

66.     Plaintiff repeats and re-alleges the allegations set forth above.

67.     Beginning at least October 1, 2007, and continuing until at least December 31, 2012, Defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, or stabilize the price of Parking Heaters sold in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

68.     Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Parking Heaters in the United States. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws.

69.     Plaintiff and the members of the Classes have been injured in their business and property by reason of the unlawful combination, contract, conspiracy, and agreement of Defendants and their co-conspirators. Plaintiff and Class members paid more for Parking Heaters than they otherwise would have paid in the absence of Defendants' conduct. This injury is of the type the federal antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

70.     Accordingly, Plaintiff and members of the Classes seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT**
**(15 U.S.C. § 1)**
**(Equitable Monetary Relief)**

71.     Plaintiff repeats and re-alleges the allegations set forth above.

72.     Espar and its co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

73.     Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Parking Heaters in the United States. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws.

74.     Accordingly, Plaintiff and the members of the Classes are entitled to disgorgement of all unlawful illegal profits that may have been obtained by Defendants as a result of the anticompetitive conduct alleged herein.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF STATE ANTITRUST**
**AND RESTRAINT OF TRADE LAWS**

75.     Plaintiff repeats and re-alleges the allegations set forth above.

76.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

77.     By reason of the foregoing, Defendants have violated Arizona Revised Statutes, §§ 44-1401, et seq.

78.     By reason of the foregoing, Defendants have violated California Business and Professions Code, §§ 16700, et seq.

79. By reason of the foregoing, Defendants have violated District of Columbia Code Annotated §§ 28-4501, et seq.

80. By reason of the foregoing, Defendants have violated Hawaii Revised Statutes Annotated §§ 480-1, et seq.

81. By reason of the foregoing, Defendants have violated Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, et seq.

82. By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1, et seq.

83. By reason of the foregoing, Defendants have violated Kansas Statutes Annotated, §§ 50-101, et seq.

84. By reason of the foregoing, Defendants have violated Maine Revised Statutes, 10 M.R.S. §§ 1101, et seq.

85. By reason of the foregoing, Defendants have violated Michigan Compiled Laws Annotated, §§ 445.773, et seq.

86. By reason of the foregoing, Defendants have violated Minnesota Statutes §§ 325D.49, et seq.

87. By reason of the foregoing, Defendants have violated Mississippi Code Annotated, 75-21-1, et seq.

88. By reason of the foregoing, Defendants have violated Nebraska Revised Statutes Annotated §§ 59-801, et seq.

89. By reason of the foregoing, Defendants have violated Nevada Revised Statutes Annotated, §§ 598A.010, et seq.

90. By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes §§ 356:1, et seq.

91.     By reason of the foregoing, Defendants have violated New Mexico Statutes Annotated, 57-1-1, et seq.

92.     By reason of the foregoing, Defendants have violated New York General Business Laws §§ 340, et seq.

93.     By reason of the foregoing, Defendants have violated North Carolina General Statutes, §§ 75-1, et seq.

94.     By reason of the foregoing, Defendants have violated North Dakota Century Code, §51-08.1-01, et seq.

95.     By reason of the foregoing, Defendants have violated Oregon Revised Statutes §§ 646.705, et seq.

96.     By reason of the foregoing, Defendants have violated South Dakota Codified Laws, §§ 37-1-3.1, et seq.

97.     By reason of the foregoing, Defendants have violated Tennessee Code Annotated §§ 47-25-101, et seq.

98.     By reason of the foregoing, Defendants have violated Utah Code Annotated, §§ 76-10-911, et seq.

99.     By reason of the foregoing, Defendants have violated Vermont Stat. Ann. 9 §§ 2453, et seq.

100.     By reason of the foregoing, Defendants have violated West Virginia Code, §§ 47-18-1, et seq.

101.     By reason of the foregoing, Defendants have violated Wisconsin Statues, §§ 133.01, et seq.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF STATE CONSUMER PROTECTION**
**AND UNFAIR COMPETITION LAWS**

102. Plaintiff repeats and re-alleges the allegations set forth above.

103. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

104. By reason of the foregoing, Defendants have violated Arkansas's laws by engaging in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of AR ST §4-88-101, et seq.

105. By reason of the foregoing, Defendants have violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.

106. By reason of the foregoing, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.

107. By reason of the foregoing, Defendants have violated the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93A, § 1, et seq.

108. By reason of the foregoing, Defendants have violated Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020.

109. By reason of the foregoing, Defendants have violated Montana's Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code §§ 30-14-103 et seq.

110. By reason of the foregoing, Defendants have violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, et seq.

111. By reason of the foregoing, Defendants have violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:2, et seq.

112.    By reason of the foregoing, Defendants have violated New York's General Business Law, N.Y. Gen. Bus. Law § 349, et seq.

113.    By reason of the foregoing, Defendants have violated South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

114.    By reason of the foregoing, Defendants have violated Utah Code §§ 76-10-911, et seq.

115.    By reason of the foregoing, Defendants have violated Vermont's Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, et seq.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A.    Declaring this action to be a proper class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Classes as defined herein, that Plaintiff be appointed as class representative, and that Plaintiff's counsel be appointed as counsel for the Classes;

B.    That the contract, combination, or conspiracy and the acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees, as well as all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the conspiracy alleged in this Complaint;

D.    That the Court order equitable relief in the form of disgorgement of all unlawful or illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein;

E.      That Plaintiff and the Classes recover damages, as provided under state antitrust and consumer protection laws, and that a joint and several judgment in favor of Plaintiff and the Classes be entered against Defendants in an amount to be trebled in accordance with such laws, where applicable;

F.      That Plaintiff and the Classes recover pre-judgment and post-judgment interest as permitted by law;

G.      That Plaintiff and the Classes recover their costs of the suit, including attorneys' fees, as provided by law; and

H.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: May 22, 2015                         Respectfully submitted,

      */s/ Steven N. Williams*
Steven N. Williams
**Cotchett, Pitre & McCarthy, LLP**
40 Worth Street, 10th Floor
New York, NY  10013
Tel:  (212) 201-6820
Fax:  (646) 219-6678

840 Malcolm Rd., Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
swilliams@cpmlegal.com

Daniel E. Gustafson
Jason S. Kilene
Daniel C. Hedlund
Daniel J. Nordin
**Gustafson Gluek PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI, BARRETT &**
**BENEDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 496-8282
Facsimile: (215) 496-0999
sparis@smbb.com
phoward@smbb.com

Patrick W. Michenfelder
**GRIES LENHARDT MICHENFELDER**
**ALLEN P.L.L.P.**
12725 43rd Street NE, Suite 201
St. Michael, Minnesota 55376
Tel: (763) 497-3099
Fax: (763) 497-3639
pat@glmalaw.com

***Counsel for Plaintiff Davidson Transfer, LLC***